CITY OF QUINCY *vs.* BROOKS-SKINNER, INC.
(and a companion case between the same parties).

Norfolk. December 27, 1949. — March 3, 1950.

Present: QUA, C.J., LUMMUS, WILKINS, SPALDING, & COUNIHAN, JJ.

*Review, Writ of. Practice, Civil,* Report, Appeal, Requests, rulings and instructions, Case stated, Judicial discretion, Question of law or fact, Waiver, Powers of counsel. *Municipal Corporations,* Contracts, Municipal finance, Officers and agents, Trustee process. *Contract,* Validity, With municipality. *Attorney at Law. Waiver. Trustee Process.*

Appeal lies to the Superior Court under G. L. (Ter. Ed.) c. 231, § 97, from the disposition of a petition for a writ of review in a District Court.

Requests for rulings presented at the hearing of a case stated have no standing; their disposition does not raise questions of law and cannot be the basis of a report to this court under G. L. (Ter. Ed.) c. 231, § 111.

The question, whether there was an abuse of discretion in the disposition of a petition for a writ of review, is a question of law and can be brought to this court by report under G. L. (Ter. Ed.) c. 231, § 111.

A written acceptance by the mayor of a city of a bid submitted by a building contractor was invalid and unenforceable as a contract with the city because, if a contract in writing, it was not signed by "the officer or . . . the head of the department or . . . the chairman of the board" making it as required by G. L. (Ter. Ed.) c. 43, § 29, as appearing in St. 1938, c. 378, § 10; because copies of the purported contract were not filed with certain city officials as required by a city ordinance; and because there was no appropriation to which the purported contract obligation was properly chargeable.

Under G. L. (Ter. Ed.) c. 44, § 32, the expense of constructing a temporary addition to a city hospital was not properly chargeable to an appropriation made by the city council for "Expense" of the hospital department following submission of a budget of that department including under the title "Hospital Expense" sundry items, none of which was for new construction.

An attempt by a city solicitor to waive certain requirements of law not complied with in the purported making of a contract between the city and a builder for construction work was not shown where, at the trial of an action by the builder against the city based on such purported contract, the solicitor stated to the court that in view of an existing "war emergency" he was satisfied that there had been compliance with the law and that the city had no defence to the action.

There was no abuse of discretion nor error of law in the denial of a petition by a city for a writ of review of a judgment for the plaintiff in an action by a builder against the city based on a purported contract for construction work where it appeared that, although the city actually had had a good defence to the action on the ground of invalidity of the contract through noncompliance with certain requirements of law in its making, the city solicitor in good faith had stated to the court at the trial of the action that in view of an existing "war emergency" he was satisfied that there had been compliance with the law and that the city had no defence.

An action against a municipality on a judgment previously obtained against it was not improper because commenced by trustee process.

Two PETITIONS, filed in the District Court of East Norfolk on November 19, 1942.

Upon appeal to the Superior Court, the cases were heard by *Collins*, J.

In this court the cases were submitted on briefs.

*J. W. Bartlett & W. G. Guernsey*, for the petitioner.

*E. R. Greenhood*, for the respondent.

SPALDING, J. These are two petitions for writs of review of judgments entered in a District Court. In one, the petitioner sought review of a judgment which the respondent

obtained against it in an action of contract based on a declaration for work done and materials furnished according to an account annexed. In the other, the judgment was entered in an action commenced by trustee process and was based on the earlier judgment obtained in the action of contract. To this petition the respondent demurred. For convenience we shall refer to the petition to review the original judgment as the first, and that to review the judgment based on that judgment as the second. In the District Court the first petition was granted, and the demurrer to the second petition was sustained. Appeals were taken to the Superior Court in both cases. This was the correct procedure. See G. L. (Ter. Ed.) c. 231, § 97; *Lynn Gas & Electric Co.* v. *Creditors National Clearing House*, 235 Mass. 114; *Home Finance Trust* v. *Rantoul Garage Co.* 300 Mass. 86, 88. In the Superior Court the demurrer to the second petition was overruled, and both petitions were then heard on a statement of agreed facts.

The facts may be summarized as follows: In 1941 the board of managers of the Quincy City Hospital were alarmed by the increase in the daily number of personal injury cases attributable to the Fore River Shipyard, in consequence of which the existing hospital facilities were overtaxed, and by the possibility that a major catastrophe might occur at the plant. In response to the board's request for additional facilities, the mayor looked into the matter and learned that the respondent had the necessary materials and labor to erect a satisfactory temporary structure in about six weeks. On two occasions in 1941 the mayor asked the city council for "loan orders" by which to finance this project, but the requests were not approved. Blueprints and specifications for the proposed addition were prepared under the direction of the hospital's board of managers, and under date of June 9, 1941, the respondent submitted a written and signed bid to the city quoting a price of $20,760 for the erection of the addition. The city solicitor advised the mayor that there was $140,000 of unexpended general expense appropriation to the credit of

the hospital department and that, in view of the "war emergency," this was an obligation which could be incurred against the appropriation without advertising for bids or following the other requirements of the General Laws and city ordinances. At the time the contract hereinafter mentioned was made, and at the time the respondent's bill for work and materials furnished under it was presented to the city, there was an unexpended balance of the general expense appropriation to the hospital department sufficient to cover the contract "if the said contract and work were properly chargeable to that appropriation." The mayor signed and accepted the bid on behalf of the city, notified the respondent that this had been done, and requested it to begin work immediately. With the exception of this bid, no written document was executed by the parties. No copy of any contract was retained by the hospital department or the commissioner of public works, and none was filed with the city auditor or city clerk. There was no public advertising for bids.

The respondent immediately commenced work on the addition.[1] Before the work was completed the city council notified the mayor that the contract with the respondent for the erection of a temporary building "had not been and would not be approved . . . [by them] and that a permanent addition had been voted instead." The mayor thereupon cancelled the contract with the respondent, with the stipulation that the fair value of the materials and labor furnished would be paid by the city. The respondent submitted an itemized bill for $5,662.50, which was approved by the commissioner of public works. It is agreed that the bill was fair and accurate.

Since the auditor had publicly announced that he would refuse payment of the bill, the respondent brought an action against the city in the District Court. The city, by its solicitor, appeared and answered. When the case came on for trial, "in place of a formal trial, the attorneys

[1] The respondent obtained a building permit, completed the excavation, and installed the necessary piers, sills, and so forth, for the foundation.

for the . . . parties presented their evidence orally."
The city solicitor stated that in view of the existing "war
emergency" he was satisfied that the General Laws and the
ordinances of the city had been complied with, and that
the city had no legal defence to the action. "The trial
judge, after asking further questions and receiving answers
thereto, found for the plaintiff on its declaration."

After judgment had been entered, the respondent com-
menced an action on it by trustee process in which three
banks were named as trustees. The city appeared and filed
an answer, but was defaulted when the case was called for
trial. Thereafter a judgment for the respondent was entered,
and an execution issued which was subsequently returned to
court with the indorsement that it had been satisfied in full.

With respect to the first petition the judge of the Superior
Court ruled as follows: "On the agreed statement of facts
the . . . [petitioner] had ample opportunity, through its
city solicitor, to present its defence. The judgment was
not obtained by default or mistake. Within my discretion,
the petition for review is denied." He also dealt with
several requests for rulings submitted by the petitioner,
granting some and denying others. The judge denied the
second petition "as a matter of discretion." Since the
petitioner had apparently lost the right to come here by
appeal or exceptions, the judge, to determine the correctness
of his rulings, reported the cases to this court "in the event
that and in so far as . . . [he had] the power" to do so.

At the outset it becomes necessary to determine whether
the judge had the power to report the cases. The authority
given to the Superior Court under G. L. (Ter. Ed.) c. 231,
§ 111, to make reports to this court extends only to ques-
tions of law. *Atlantic Maritime Co.* v. *Gloucester,* 228 Mass.
519, 522. *Scaccia* v. *Boston Elevated Railway,* 308 Mass.
310, 314. *Winslow Bros. & Smith Co.* v. *Hillsborough Mills,*
319 Mass. 137, 141. Since the cases were presented upon a
case stated, the requests for rulings reported had no stand-
ing and brought no questions of law to this court. It was
the duty of the judge to order the correct judgment on the

case stated. *Howland* v. *Stowe,* 290 Mass. 142, 146. *Associates Discount Corp.* v. *Gillineau,* 322 Mass. 490, 491. If any question is brought here by this report, it is only such as may arise out of the orders denying the petitions.

The respondent urges that these orders were discretionary and therefore present no questions of law. Consequently, it is argued, the court was without power to report the cases. We cannot agree. It is true that the granting or denial of a petition for a writ of review "rests substantially in the sound discretion of the court, the exercise of which will not be set aside unless positive error of law appears." *Burt* v. *Hodsdon,* 242 Mass. 302, 303. *Weeks* v. *Adamson,* 106 Mass. 514, 517. *Boston* v. *Robbins,* 116 Mass. 313, 315. *Sylvester* v. *Hubley,* 157 Mass. 306, 308. *Stillman* v. *Whittemore,* 165 Mass. 234, 235. *Stillman* v. *Donovan,* 170 Mass. 360. *Welch* v. *Chase,* 213 Mass. 519, 521. In several of the cases just cited, which came here on exceptions, it was said that, since an order granting or denying a petition for a writ of review is discretionary, it is not subject to exception. Similarly, with respect to other matters resting in the discretion of the court, such as the granting or denial of a motion for a new trial or of a motion to amend pleadings, it has been said that they are not subject to exception for the reason that they involve no question of law. *Norton* v. *Lilley,* 214 Mass. 239, 240. *Goodyear Park Co.* v. *Holyoke,* 298 Mass. 510, 512. *Peterson* v. *Cadogan,* 313 Mass. 133, 134–135. These statements are sufficiently accurate as applied to most situations. However, many decisions have recognized that, although such instances are very rare, an error of law may arise where there has been an abuse of discretion. *Nicholas* v. *Lewis Furniture Co.* 292 Mass. 500, 505. *Long* v. *George,* 296 Mass. 574, 578–579. *DeLuca* v. *Boston Elevated Railway,* 312 Mass. 495, 497. *Matter of Loeb,* 315 Mass. 191, 198. *Perry* v. *Manufacturers National Bank,* 315 Mass. 653, 656. *Bartley* v. *Phillips,* 317 Mass. 35, 43. *Sharpe, petitioner,* 322 Mass. 441, 444–445. *Hartmann* v. *Boston Herald-Traveler Corp.* 323 Mass. 56, 60–61. Judicial dis-

cretion has often been defined in our decisions. See *Davis* v. *Boston Elevated Railway,* 235 Mass. 482, 496–497; *Long* v. *George,* 296 Mass. 574, 578–579; *Bartley* v. *Phillips,* 317 Mass. 35, 43–44. The petitioner argues that the denial of its petitions constituted an abuse of discretion. A question of law is therefore presented and it is properly brought here by the report.

We pass now to the merits. There can be little doubt that in the action of contract brought by the respondent the petitioner had a good defence. By G. L. (Ter. Ed.) c. 43, § 29, as appearing in St. 1938, c. 378, § 10,[1] "All contracts made by any department, board or commission where the amount involved is five hundred dollars or more shall be in writing," and shall not be deemed to have been made or executed "until the approval of the mayor . . . and . . . also of the officer or of the head of the department or of the chairman of the board, as the case may be, making the contract is affixed thereto." If the bid signed by the mayor can be considered a contract in writing within the meaning of the first part of this statute, it was not signed by the head of the department or chairman of the board making the contract. See *Eastern Massachusetts Street Railway* v. *Mayor of Fall River,* 308 Mass. 232. A city ordinance also required that such contracts be in writing and that copies be filed with certain city officials. There was no compliance with these requirements. See *Burt* v. *Municipal Council of Taunton,* 272 Mass. 130, 133–134; *Duff* v. *Southbridge, ante,* 224, 230. Nor does it appear that the obligation incurred was properly chargeable to the unexpended balance of the hospital appropriation. As stated above, the unexpended balance in that appropriation at all times here material was sufficient to cover the amount which the respondent sought to recover. Under G. L. (Ter. Ed.) c. 44, § 31, no department of the city, with an exception not here

---

[1] It does not appear in the statement of agreed facts that the city has adopted one of the plans which make the provisions of c. 43 of the General Laws applicable (see § 2), but the parties have argued the case on the basis that the city was subject to that chapter and we shall deal with the case on that footing.

material, could incur any liability in excess of the appropriation. And under § 32 of c. 44, as it read before amended by St. 1941, c. 473, § 2, the "budget shall consist of an itemized and detailed statement of the money required" and the appropriations must be made "in detail, clearly specifying the amount to be expended for each particular purpose." See *Bell* v. *Cambridge*, 306 Mass. 249. The budget, in so far as it relates to the hospital, and the appropriations for the hospital made by the city council are set forth in the statement of agreed facts.[1] In neither is there any detailed statement which would satisfy the requirements of § 32.[2] Persons dealing with a municipality, of course, must take notice of limitations touching its contracting power of the sort set forth above, and cannot recover upon contracts, express or implied, attempted to be made in violation of them. *Adalian Brothers, Inc.* v. *Boston*, 323 Mass. 629, 631–632. *Duff* v. *Southbridge, ante,* 224, 228.

However, it does not follow that, because the city had a good defence to the original action of contract, the judge committed error of law in denying the petitions. It has been said that the discretion to grant or deny petitions for review "'should be exercised in such a way as to promote an orderly and proper administration of justice, and not to encourage carelessness, ignorance,' undue delay or perversity in the conduct of cases in the courts." *Robinson* v. *Lyndonville Creamery Association*, 284 Mass. 396, 399. It is plain that if the petitioner were a private party as distinct

---

[1] It appeared therefrom that in the budget submitted to the city council for the hospital for 1941 sums were requested for "Hospital Salaries," "Hospital Pensions," "New Equipment," and "Hospital Expense," the items listed under the last title being "Coal," "Gas and Electricity," "House Supplies," "Medical and Surgical Supplies," "Food," "X-ray Supplies," "Building and Power Plant Repairs," "Automotive Maintenance," "Express," "Commission," "Insurance," "Postage and Office Supplies," "Telephone," and "Replacements"; and that the appropriations made were stated to be for "Salaries and Wages," "Expense," "Pensions" and "New Equipment," without further particularization. — REPORTER.

[2] Since the contract, for reasons just stated, was not enforceable against the city, it is unnecessary to decide whether a "special emergency" existed within the meaning of G. L. (Ter. Ed.) c. 43, § 28, so as to make the requirements of that section relating to advertising for bids inapplicable.

from a municipal corporation its contention that there was an abuse of discretion would be without merit. The petitioner, however, stresses the fact that since it is a municipality different principles should govern. It is true that there are decisions which have restricted the right of counsel to waive requirements of law which must be complied with in order to establish liability on the part of a municipality. Thus in *Brown* v. *Winthrop*, 275 Mass. 43, it was held that counsel for a town could not waive the giving of notice of the time, place and cause of injury required by G. L. (Ter. Ed.) c. 84, § 18. And in *Waltham* v. *Newton*, 306 Mass. 59, where a statute permitted a municipality to recover from another within a prescribed time the expense of relief furnished to a needy person, it was held that an action brought after the time limited in the statute could not be maintained, and that a stipulation entered into by counsel for the defendant city waiving this provision was of no effect. See *Gay* v. *Cambridge*, 128 Mass. 387, 388; *Old Colony Railroad* v. *Assessors of Quincy*, 305 Mass. 509, 512. On the other hand it was held in *Brocklesby* v. *Newton*, 294 Mass. 41, that an admission by counsel in open court, that a notice of the time, place and cause of the injury under the statute was sufficient, precluded the city from thereafter attacking the notice. This court said at page 43, "This is not waiving a condition precedent. It is a method of establishing facts. Nothing is more common in practice or more useful in dispatching the business of the courts than for counsel to admit undisputed facts. Their clients, including municipal corporations, are bound by such admissions."

We do not construe the conduct of the city's counsel in the trial of the contract action as an attempt to waive the governing provisions of law relating to the contract in question. After the facts were laid before the judge, counsel stated that in his opinion the city had no defence. The case is distinguishable from *Connor* v. *Haverhill*, 303 Mass. 42, on which the petitioner heavily relies. There the plaintiffs in the original action entered into an alleged contract

with the defendant city in violation of numerous provisions of law restricting its power to contract. In an action to recover on the contract a verdict was directed for the city. While exceptions were pending, although the city solicitor was of opinion that the plaintiffs could not prevail, the city council, with knowledge of the city solicitor's opinion and with no belief that the claim was other than a moral obligation, passed an order authorizing a settlement for $6,000, and pursuant to this order an agreement for judgment was entered. To enjoin the enforcement of that judgment a suit was begun by ten taxpayers under G. L. (Ter. Ed.) c. 40, § 53. An injunction was granted and upon appeal to this court the decree was affirmed. The court viewed the agreement for judgment as a gift rather than a settlement of a law suit, and held that it was beyond the power of the city to make it. "The attempt to defeat the statutes and the ordinances by means of a gift was constructively fraudulent. The consent judgment was a means used in carrying out that attempt. The purpose of the statutes and ordinances cannot be thwarted in this manner" (page 48). In the cases under consideration there is no suggestion of fraud, constructive or otherwise, on the part of counsel for the city, and it will not be presumed. *Toy* v. *Green*, 319 Mass. 354, 360. The most that can be said is that he misapprehended the law.

Had the judge of the Superior Court in the exercise of his discretion seen fit to grant the petitions here, we could not say that he was wrong. But it is one thing to say that a judge may do a particular thing and quite another to say that he must. Probably no principle is more deeply embedded in our law than that which teaches that a litigant is entitled to his day in court but no more. It is a salutary principle. It is the very essence of the doctrine of res judicata. In every case there comes a time when litigation must end. Ordinarily that occurs when the parties have had a fair opportunity to present their case to a court and the appropriate appellate process has been exhausted or waived. The judge could very well have concluded that

that time had arrived here. At least we cannot say a "conscientious judge, acting intelligently, could [not] honestly have taken . . . [that] view." *Davis v. Boston Elevated Railway,* 235 Mass. 482, 502.

Moreover, to hold that these petitions should have been granted as matter of law might lead to undesirable and far reaching consequences. One obtaining a judgment against a municipality could never be sure that it was immune from attack until the time for granting writs of review had expired. See G. L. (Ter. Ed.) c. 250, § 22. It would often be possible in such cases to discover after the trial that some provision of law had been overlooked or misconceived by counsel for the municipality which, if properly invoked, might have led to a different result.

What has been said of the first petition disposes of the second. The latter was based on the judgment in the former and stands no better. The suggestion in the petitioner's brief that the action on the judgment was improper because commenced by trustee process is without merit. G. L. (Ter. Ed.) c. 246, §§ 1, 20. *National Shawmut Bank v. Waterville,* 285 Mass. 252.

*Orders denying petitions affirmed.*